IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**FILED**

MAY 14 2008
MAY 14 2008
Judge Robert M. Dow, Jr.
United States District Court

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) 08CV2783 |
| | ) JUDGE DOW |
| DATA BUSINESS SOLUTIONS INC., *et al.*, | ) MAGISTRATE JUDGE DENLOW |
| | ) |
| Defendants. | ) |
| | ) |

## DECLARATION AND CERTIFICATION OF PLAINTIFF'S COUNSEL PURSUANT TO FED. R. CIV. P. 65(b) AND LOCAL RULE 5.5(d) IN SUPPORT OF PLAINTIFF'S *EX PARTE* MOTION FOR TEMPORARY RESTRAINING ORDER AND MOTION TO TEMPORARILY SEAL FILE

I, Karen D. Dodge, declare as follows:

1.     I am an attorney employed by plaintiff Federal Trade Commission ("FTC" or "Commission") in the Midwest Region in Chicago, Illinois.

2.     The FTC has not attempted to notify defendants of the FTC's *Ex Parte* Motion for a Temporary Restraining Order, Other Equitable Relief, and Order to Show Cause Why a Preliminary Injunction Should Not Issue ("TRO Motion"), filed contemporaneously herewith, nor should such notice be given, for the reasons set forth below.

3.     The evidence set forth in the Memorandum Supporting the FTC's *Ex Parte* Motion for a Temporary Restraining Order, Other Equitable Relief, and Order to Show Cause Why a Preliminary Injunction Should Not Issue ("TRO Memo"), and in the accompanying exhibits, which I have personally reviewed, show that defendants have engaged, and are likely to

continue to engage, in a scheme designed to deprive consumers of substantial amounts of money through fraud and deception.

4.     The evidence shows that defendants send unsolicited mailings that look like invoices to small businesses and non-profit organizations. These mailings mislead consumers into believing that they owe the defendants money for the continued registration of their domain names for their Internet Web sites. Defendants misrepresent their relationship with the consumers as well as the services that the defendants will provide, the only purpose of which is to induce consumers to part with their money.

5.     This evidence of pervasive fraud strongly suggests that there is a substantial risk the defendants will destroy or conceal evidence, and dissipate or withdraw and conceal assets obtained through their fraudulent scheme if they learn of any order issued by this Court before execution of the asset freeze. The evidence also demonstrates that defendants have taken steps to disguise their actual identities and avoid detection. They have used mail drops in Chicago to hide their true location and they typically provide no contact information, except for e-mail addresses, in their mailings or on their Web sites. In addition, defendants have changed the name they do business under at least once in the past. Moreover, consumers' checks that are sent to the Chicago mail drops are routinely forwarded to Canada. Thus, it is likely that defendants can and would move assets and records outside of this Court's reach.

6.     There is good cause to believe that immediate and irreparable damage to the Court's ability to achieve effective final relief in the form of monetary redress will occur from the sale, transfer, concealment, or other disposition by defendants of assets that were collected from their illegal scheme if defendants are notified of the FTC's TRO Motion prior to a hearing thereon.

7.     Moreover, as illustrated by the following examples (provided upon information and belief), it has been the FTC's experience that defendants who receive notice of the FTC's intent to file an action alleging fraud may attempt to undermine the FTC's attempts to preserve the status quo by immediately dissipating or concealing assets, as well as by destroying documents:

a.     In *FTC v. 4049705 Canada Inc.,* No. 04 C 4694 (N.D. Ill. 2004) (Kennelly, J.), a telemarketing fraud case against sellers of business directories, Canadian authorities executed a search warrant on the business premises of Canadian defendants. The FTC subsequently filed its complaint, and its motion for a temporary restraining order with asset freeze, and provided notice to the defendants. The FTC subsequently discovered only through its own investigation that the defendants had made several transfers totaling approximately $70,000 after receiving notice of the FTC's action but before the asset freeze was imposed. The FTC was unable to recover the $70,000. The individual defendant was later held in contempt for transferring real estate in violation of the court-imposed asset freeze.

b.     In *FTC v. Dennis Connelly, et al.,* SACV06-701 DOC (C.D. Cal. 2006), involving a debt reduction scheme, the FTC requested an *ex parte* TRO and asset freeze against all defendants. The court declined to issue an asset freeze against two of the three individual defendants and issued an order to show cause why an asset freeze should not issue as to them. The defendant whose assets were frozen and one of the other defendants then withdrew amounts totaling close to $750,000 from a joint account within 24 hours. The judge subsequently extended the asset freeze over all defendants. Approximately $420,000 was recovered.

c.     In *FTC v. Intellinet.Com, Inc.,* No. CV-98-2140 CAS (C.D. Cal. 1998), the FTC obtained an *ex parte* TRO with an asset freeze and served the order on banks where the

3

defendants were known or suspected to have accounts. While the person who was serving the TRO for the FTC was at one of the banks and speaking to a branch manager about the TRO, one of the defendants came into the bank, after having been served with the TRO, and attempted to withdraw money from his account there. He was unsuccessful.

      d.    In *FTC v. Equifin International, Inc.*, No. CV-97-4526 DT, 1997 U.S. Dist. LEXIS 10288 (C.D. Cal. 1997), after an *ex parte* TRO was entered against the corporate defendants and their owner, and after the order was served on the corporate defendants but not on the individual, the individual directed an affiliate to withdraw bank funds from an account containing proceeds from the scam. Upon demand of the court-appointed receiver, the defendant ultimately returned the withdrawn funds.

      e.    In *FTC v. Intellicom*, No. CV-97-4572 TJH (C.D. Cal. 1997), the FTC obtained an *ex parte* TRO with an asset freeze, which it then served on banks at which the defendants were known to have accounts. One defendant, whose bank was served earlier in the day, called the bank and asked the branch manager to wire approximately $100,000 from an account that was specifically designated in the TRO as frozen. The branch manager encountered a red flag in the system, discovered the account had been frozen, and refused to release the funds.

      f.    In *FTC v. Thomas E. O'Day*, No. 94-1108-CIV-ORL-22 (M.D. Fla. 1994), the district court denied the FTC's request to issue a TRO with asset freeze *ex parte* and instead scheduled a hearing, with notice to the defendants, on the relief sought. Several days later, the Federal Bureau of Investigation executed a search warrant on the defendants' business premises at the same time the FTC served notice of its action and of the scheduled hearing. Within hours, an individual defendant withdrew approximately $200,000 from one of his bank accounts.

4

g.      In *FTC v. United Consumer Services*, No. 94-CV-3164-CAM (N.D. Ga. 1994), the FTC attempted to serve a TRO with asset freeze upon a defendant who was traveling on business.  When the defendant's lawyer notified his client of the order, the defendant went directly to his bank and removed $100,000 from a corporate bank account.  The FTC learned of the withdrawal only after receiving the account statements from the bank.  After being served with an order to show cause why the defendant should not be held in contempt for violating the asset freeze, the defendant finally produced the money at a deposition.

h.      In *FTC v. Lopinto*, No. CV S-93-561 (LDG) (D. Nev. 1993), the district court issued an *ex parte* TRO with an asset freeze.  The order was served on a bank where one of the corporate defendants maintained an account.  Before the bank could implement the freeze, the corporation withdrew $12,300 from the account.

i.      In *FTC v. Academic Guidance Services*, No. 92-3001 (AET) (D.N.J. 1992), defendants discovered that the FTC intended to file a case against them (and seek an *ex parte* TRO) the following week.  An informant told the FTC that the defendants then leased a document shredder and spent the weekend destroying documents, a fact subsequently confirmed by one of the defendants' employees.

j.      In *FTC v. Osborne Precious Metals, Inc.*, No. CV-92-4194 AWT (C.D. Cal. 1992), the court issued an *ex parte* TRO on July 15, 1992.  The court-appointed receiver and his representatives effected service of the order the following day: first at defendants' offices in Los Angeles, and, an hour later, at defendants' offices in Las Vegas.  The receiver discovered that a number of business records in the Las Vegas offices had been destroyed shortly before his representatives arrived to secure the premises.

k. In *FTC v. Applied Telemedia Engineering and Management, Inc.*, No. 91-635 (S.D. Fla. 1991), the defendants were advised, pursuant to an agreement with the FTC, that the FTC had filed its complaint and intended to seek a TRO with an asset freeze from the court. When the FTC's agents went to the defendants' offices to serve process, they observed defendants removing boxes of documents from the premises. The FTC moved for, and received, an *ex parte* TRO the following day.

l. In *FTC v. American National Cellular, Inc.*, No. CV-85-7375 WJR (C.D. Cal. 1985), the court issued an *ex parte* TRO with an asset freeze on November 12, 1985. A defendant learned of the court's ruling and immediately withdrew $1.2 million from his bank accounts before the banks were served with a copy of the freeze order. The defendant fled California and dissipated the money while living overseas.

8. Accordingly, Plaintiff respectfully submits that it is in the interest of justice and the public interest that the FTC's *Ex Parte* TRO Motion be heard without notice to defendants.

I declare, under penalty of perjury, that the foregoing is true and correct.

Executed on May 14, 2008

Karen D. Dodge
Attorney for Plaintiff
Federal Trade Commission
55 West Monroe Street, Suite 1825
Chicago, Illinois 60603
(312) 960-5634 (telephone)
(312) 960-5600 (facsimile)

6