**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| FEDERAL TRADE COMMISSION, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> DATA BUSINESS SOLUTIONS INC., also d/b/a ) <br> INTERNET LISTING SERVICE CORP., ) <br> ILS CORP., ILSCORP.NET, DOMAIN LISTING ) <br> SERVICE CORP., DLS CORP., and ) <br> DLSCORP.NET; ) <br> ) <br> 1646153 ONTARIO INC., also d/b/a ) <br> INTERNET LISTING SERVICE CORP., ) <br> ILS CORP., ILSCORP.NET, DOMAIN LISTING ) <br> SERVICE CORP., DLS CORP., and ) <br> DLSCORP.NET; ) <br> ) <br> ARI BALABANIAN; ) <br> ) <br> ISAAC BENLOLO; ) <br> ) <br> KIRK MULVENEY; ) <br> ) <br> STEVEN E. DALE; and ) <br> ) <br> PEARL KESLASSY, ) <br> ) <br> Defendants. ) | Civil Action No. 08 CV 2783 <br><br> Judge Robert M. Dow Jr. <br><br> Magistrate Judge Morton Denlow |

**AMENDED COMPLAINT FOR INJUNCTIVE AND OTHER EQUITABLE RELIEF**

Plaintiff, the Federal Trade Commission ("FTC" or "the Commission"), for its complaint alleges as follows:

The FTC brings this action under Section 13(b) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 53(b), to secure temporary, preliminary, and permanent injunctive

relief, restitution, rescission of contracts, disgorgement, and other equitable relief for defendants' deceptive acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction pursuant to 15 U.S.C. §§ 45(a) and 53(b), and 28 U.S.C. §§ 1331, 1337(a), and 1345.

2. Venue in the United States District Court for the Northern District of Illinois is proper under 15 U.S.C. § 53(b) and 28 U.S.C. § 1391(b), (c), and (d).

## PLAINTIFF

3. Plaintiff, the FTC, is an independent agency of the United States Government created by statute. 15 U.S.C. §§ 41-58, as amended. The Commission is charged, *inter alia*, with enforcement of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), which prohibits unfair or deceptive acts or practices in or affecting commerce. The Commission is authorized to initiate federal district court proceedings, by its own attorneys, to enjoin violations of the FTC Act, and to secure such equitable relief as may be appropriate in each case, including restitution for injured consumers. 15 U.S.C. § 53(b).

## DEFENDANTS

4. Defendant Data Business Solutions Inc., also d/b/a Internet Listing Service Corp., ILS Corp., ILSCORP.NET, Domain Listing Service Corp., DLS Corp., and DLSCORP.NET (hereinafter "Data Business Solutions") is an Ontario corporation with its principal place of business located at 6315 Shawson Drive, Unit #4, Mississauga, Ontario L5T 1J2. It also maintains a mail drop at 27 N. Wacker Dr., Suite #650, Chicago, Illinois 60606, from which it receives payments sent by consumers in the United States. Data Business Solutions transacts or has transacted business in the Northern District of Illinois and throughout the United States.

5.Defendant 1646153 Ontario Inc., also d/b/a Internet Listing Service Corp., ILS Corp., ILSCORP.NET, Domain Listing Service Corp., DLS Corp., and DLSCORP.NET (hereinafter "Internet Listing Service") is an Ontario corporation with its principal place of business located at 115 Apple Creek Blvd., Suite #3, Markham, Ontario l3R 6C9. Internet Listing Service transacts or has transacted business in the Northern District of Illinois and throughout the United States.

6.Defendant Ari Balabanian is an officer and director of Data Business Solutions. At all times relevant to this complaint, acting alone or in concert with others, he has formulated, directed, controlled, or participated in the acts and practices of Data Business Solutions, including the acts and practices set forth in this complaint. Ari Balabanian transacts or has transacted business in the Northern District of Illinois and throughout the United States.

7.Defendant Isaac Benlolo is a principal of Internet Listing Service. At all times relevant to this complaint, acting alone or in concert with others, he has formulated, directed, controlled, or participated in the acts and practices of Internet Listing Service, including the acts and practices set forth in this complaint. Isaac Benlolo transacts or has transacted business in the Northern District of Illinois and throughout the United States.

8.Defendant Kirk Mulveney is a principal of Internet Listing Service. At all times relevant to this complaint, acting alone or in concert with others, he has formulated, directed, controlled, or participated in the acts and practices of Internet Listing Service, including the acts and practices set forth in this complaint. Kirk Mulveney transacts or has transacted business in the Northern District of Illinois and throughout the United States.

9.Defendant Steven E. Dale is an officer and director of Internet Listing Service. At all times relevant to this complaint, acting alone or in concert with others, he has formulated,

directed, controlled, or participated in the acts and practices of Internet Listing Service, including the acts and practices set forth in this complaint. Steven E. Dale transacts or has transacted business in the Northern District of Illinois and throughout the United States.

10. Defendant Pearl Keslassy is an officer and director of Internet Listing Service. At all times relevant to this complaint, acting alone or in concert with others, she has formulated, directed, controlled, or participated in the acts and practices of Internet Listing Service, including the acts and practices set forth in this complaint. Pearl Keslassy transacts or has transacted business in the Northern District of Illinois and throughout the United States.

## COMMERCE

11. At all times relevant to this complaint, defendants have maintained a substantial course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

## DEFINITIONS

12. "Domain name" means a unique, often easy to remember, name used to identify and locate a specific Web site address using standard Internet protocols. In order to maintain a Web site that is accessible to Internet users around the world, a domain name must be registered with a "domain name registrar" that is accredited by The Internet Corporation for Assigned Names and Numbers ("ICANN").

13. "Search optimization," also known as "search engine optimization," means a process or method for increasing the amount of traffic to a Web site by improving or optimizing the Web site in a way that improves the Web site's ranking or position when consumers conduct Internet searches using search engines.

**DEFENDANTS' COURSE OF CONDUCT**

14.     Since at least August 2004, and continuing thereafter, defendants have sent unsolicited mailings to consumers throughout the United States that appear to be invoices or renewal notices for the purported continued registration of consumers' actual current domain names or variants of their domain names that are similar to, and easily confused with, consumers' current domain names.  Using the business names Internet Listing Service Corp. and Domain Listing Service Corp., defendants' mailings request payment from consumers for the annual listings of their Web site addresses, and they list the consumer's current domain name or the variant domain name, a "customer," "reference," or "account number," and "notice date" at the top of the invoice, along with the dates of the annual listing period, payment instructions, and the due date.  The mailings also include a self-addressed payment envelope.

15.     The mailing claims that defendants' "**WEBSITE ADDRESS LISTING INCLUDES**" the submission of the domain name along "with 8 keywords / phrases to" 20 or 25 "MAJOR search engines."  Some of the mailings also promise initial and quarterly "search engine position and ranking reports."

16.     The initial mailing that consumers receive is a one page, two-sided document displayed in a format similar to invoices that consumers receive for existing accounts.  Most of the mailing is devoted to providing payment instructions to consumers.  Although there is a single disclosure on one side of the invoice stating that the document is a solicitation, not a bill, the disclosure is inconspicuously placed in the middle of the back page of the document and many consumers fail to observe it.  Furthermore, this single disclosure fails to comply, in many respects, with the United States Postal Service's disclaimer requirements for Solicitations in Guise of Bills, Invoices, or Statements of Account.  *See* 39 U.S.C. § 3001(D) and 39 U.S.C.

§ 3005. Most consumers who receive defendants' mailings and make payments to defendants only do so because they fail to see the disclosure.

17. Most consumers who receive the mailings and make payments to defendants are led to believe that defendants are their current domain name registrar, or a party affiliated with their current domain name registrar, and that they have to pay the invoice to maintain their registrations of their domain names.

18. Some consumers who receive the mailings realize that defendants are not their domain name registrar, but they are induced to make purchases from defendants due to its claims to provide "search optimization" services. According to defendants' Internet Web sites, www.ilscorp.net and www.dlscorp.net, defendants' "Search Optimization" services will supposedly "direct mass traffic" to their clients' Web sites, and defendants' "proven search engine listing service" will result in "a substantial increase in traffic" to their clients' Web sites. Defendants claim to provide this service by submitting their clients' "websites 4 times a year to over 25 search engines and business directories," including Google, Yahoo, and MSN.

19. After consumers have made payments to defendants, they subsequently receive annual renewal notices that are similar to the original mailing, except that they do not contain any disclosure to indicate that the mailing is not a bill. On occasion, consumers also receive renewal notices via e-mail from defendants.

20. Most consumers who make payments to defendants do not receive any domain name registration services from defendants. Only in rare instances, when consumers contact the company via e-mail, does the company even offer to provide such domain name registration services. In some cases, the company registers, in its own name, the variant domain names, which are very similar to, but easily confused with consumers' existing domain names. These

domain names are registered with Wild West Domains, Inc. ("Wild West"). These registrations, however, are not actual domain name registrations on behalf of consumers because defendants, as the registrant, holds the rights to those domain names. Defendants fail to provide consumers with any licensing agreement extending those rights to consumers, or any information or communications explaining anything about the registrations. Furthermore, defendants fail to comply with the requirements of Wild West's Domain Name Registration Agreement relating to the purchase of domain names on behalf of third parties.

21. Defendants' "search optimization" services are also ineffective. Defendants' supposed method for providing "search optimization" services, as described, have little or no effect in increasing traffic, or directing traffic, to consumers' Internet Web sites. Moreover, in many cases, defendants have not provided consumers with the initial and quarterly "search engine position and ranking reports" that some of the mailings claimed defendants would provide.

22. For the vast majority of consumers who pay the invoices, defendants simply pocket the consumers' money in exchange for doing nothing.

23. Thousands of consumers who have been deceived by defendants' mailings have paid defendants a fee ranging from at least $35.00 to $75.00, and have not received the services promised by defendants.

## VIOLATIONS OF THE FEDERAL TRADE COMMISSION ACT

24. Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits unfair or deceptive acts or practices in or affecting commerce. Misrepresentations or deceptive omissions of material fact constitute deceptive acts or practices prohibited by Section 5(a) of the FTC Act.

## COUNT I

25. In numerous instances, in connection with the offering for sale, or sale, of annual "website address" listings, defendants have represented to consumers, expressly or by implication, that consumers have a preexisting business relationship with defendants.

26. In truth and in fact, in numerous instances, consumers do not have a preexisting business relationship with defendants.

27. Therefore, defendants' representation as set forth in Paragraph 25 is false and misleading and constitutes a deceptive act or practice in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## COUNT II

28. In numerous instances, in connection with the offering for sale, or sale, of annual "website address" listings, defendants have represented to consumers, expressly or by implication, that consumers owe money to defendants for the continued registration of the consumers' current domain names.

29. In truth and in fact, in numerous instances, consumers do not owe money to defendants for the continued registration of the consumers' current domain names.

30. Therefore, defendants' representation as set forth in Paragraph 28 is false and misleading and constitutes a deceptive act or practice in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## COUNT III

31. In numerous instances, in connection with the offering for sale, or sale, of annual "website address" listings, defendants have represented to consumers, expressly or by

implication, that defendants will provide continued registration services for consumers' current domain names.

32.    In truth and in fact, in numerous instances, defendants do not provide continued registration services for consumers' current domain names.

33.    Therefore, defendants' representation as set forth in Paragraph 31 is false and misleading and constitutes a deceptive act or practice in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## COUNT IV

34.    In numerous instances, in connection with the offering for sale, or sale, of annual "website address" listings and "search optimization" services, defendants have represented, expressly or by implication, that defendants will provide "search optimization" services that will substantially increase traffic, or direct mass traffic, to consumers' Internet Web sites.

35.    In truth and in fact, in numerous instances, defendants do not provide "search optimization" services that will substantially increase traffic, or direct mass traffic, to consumers' Internet Web sites.

36.    Therefore, defendants' representation as set forth in Paragraph 33 is false and misleading and constitutes a deceptive act or practice in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## CONSUMER INJURY

37.    Consumers throughout the United States have suffered and continue to suffer substantial monetary loss as a result of defendants' unlawful acts and practices. In addition, defendants have been unjustly enriched as a result of their unlawful acts and practices. Absent

injunctive relief by this Court, defendants are likely to continue to injure consumers, reap unjust enrichment, and harm the public interest.

## THIS COURT'S POWER TO GRANT RELIEF

38.     Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), empowers this Court to issue a permanent injunction against defendants' violations of the FTC Act, and, in the exercise of its equitable jurisdiction, to order such ancillary relief as a preliminary injunction, rescission, restitution, disgorgement of profits resulting from defendants' unlawful acts or practices, and other remedial measures.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff, the Federal Trade Commission, pursuant to Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), and the Court's own equitable powers, requests that the Court:

1.     Award plaintiff such preliminary injunctive and ancillary relief as may be necessary to avert the likelihood of consumer injury during the pendency of this action and to preserve the possibility of effective final relief, including, but not limited to, temporary and preliminary injunctions, and an order freezing assets;

2.     Enter a permanent injunction to prevent future violations of the FTC Act by defendants;

3.     Award such relief as the Court finds necessary to redress injury to consumers resulting from defendants' violations of the FTC Act, including, but not limited to, rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies; and

4. Award plaintiff the costs of bringing this action, as well as such other and additional relief as the Court may determine to be just and proper.

Dated: August 11, 2008                              Respectfully Submitted,

                                                              WILLIAM BLUMENTHAL
General Counsel

s/ Karen D. Dodge
KAREN D. DODGE
MARISSA J. REICH
Attorneys for Plaintiff
Federal Trade Commission
55 West Monroe Street, Suite 1825
Chicago, Illinois 60603
(312) 960-5634 (telephone)
(312) 960-5600 (facsimile)

CERTIFICATE OF SERVICE

      I, Karen D. Dodge, an attorney, hereby certify that on August 11, 2008, I electronically filed the foregoing Amended Complaint for Injunctive and Other Equitable Relief with the Court using the CM/ECF system, which will automatically send copies to all registered counsel.

                                                      s/ Karen D. Dodge
                                                     Karen D. Dodge
                                                     Attorney for Plaintiff
                                                   Federal Trade Commission